UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMY J. JUTTE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | NO.  C13-921-RAJ-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Amy J. Jutte appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a thirty-eight year old woman with a high school education and some college.  Administrative Record ("AR") at 141, 216. Her past work experience includes employment as a dental assistant, janitor, housekeeper,

REPORT AND RECOMMENDATION - 1

receptionist, retail sales clerk, bartender, Pizza Hut delivery driver, restaurant hostess, and assistant manager at a shoe store.  AR at 34-37, 47-49, 51, 172, 206, 216, 231.

Plaintiff protectively filed applications for SSI payments and DIB on February 16, 2010.  AR at 10, 141-43, 145-46.  She alleges a disability onset date of November 15, 1972 in her DIB application, and November 1, 2008 in her SSI application.  AR at 141-43, 145-46.[1]  Plaintiff asserts that she is disabled due to fibromyalgia, carpal tunnel syndrome, bipolar disorder, high blood pressure, anxiety, depression, and post-traumatic stress disorder ("PTSD").  AR at 35, 40, 215, 263.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 65-81, 82-98.  Plaintiff requested a hearing, which took place on August 17, 2011.  AR at 31-54.  On September 12, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform her past work as a housekeeper.  AR at 10-22.  Plaintiff's request for review was denied by the Appeals Council, AR at 1-3, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On May 30, 2013, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] Although the ALJ's written decision provides that "in both applications, the claimant alleged disability beginning November 15, 1972," AR at 10, plaintiff asserts that she alleges disability beginning November 1, 2008. Dkt. 12 at 2 (citing AR at 141).  As plaintiff would have been less than one month old on November 15, 1972, the Court agrees with plaintiff that November 1, 2008 appears to be the more plausible disability onset date.

REPORT AND RECOMMENDATION - 2

### III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Jutte bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments,

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On September 2, 2011, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.

2. The claimant engaged in substantial gainful activity during the relevant period.

3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The
REPORT AND RECOMMENDATION - 5

       remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4.     The claimant has the following severe impairments: carpal tunnel syndrome, fibromyalgia, right knee disorder, anxiety disorder, and an affective disorder.

5.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to the performance of simple repetitive tasks that involve no contact with the public and no more than occasional contact with supervisors and co-workers.

7.     The claimant is capable of performing past relevant work as a housekeeper.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity unable to perform any past relevant work.

8.     The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 1972, through the date of this decision.

AR at 12-22.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.     Did the ALJ err in evaluating the medical opinion evidence?

2.     Did the ALJ err in evaluating plaintiff's credibility?

3.     Did the ALJ err in evaluating plaintiff's RFC?

Dkt. 12 at 1.

VII.   DISCUSSION

A.   <u>The ALJ Erred in Evaluating the Medical Opinion Evidence</u>

*1.   Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

    2.  *Rodger Meinz, Ph.D.*

On January 25, 2010, Dr. Meinz examined plaintiff and completed a psychological/psychiatric evaluation form for the Washington State Department of Social and Health Services ("DSHS"). AR at 405-10. Dr. Meinz indicated that medical records were not provided for him to review, but plaintiff reported being in treatment "three times for alcohol and cocaine dependence…two dui's…currently in relapse prevention at SeaMar…going great…has sponsor…clean since October, and 13 months before that." AR at 405. Dr. Meinz also summarized plaintiff's psychiatric history, including her report that her combination of medications "seemed to work" for her depression and anxiety, and that "a lot of the depression is related to the fibro[myalgia] because I hurt a lot and it gets depressing. Had a few panic attacks in the last year…reduced since learned to calm myself down and get out of the situation." AR at 405. He diagnosed plaintiff with a mood disorder NOS, panic disorder without agoraphobia, pain disorder associated with both psychological factors and a general

REPORT AND RECOMMENDATION - 8

medical condition (fibro), and polysubstance dependence, in treatment. AR at 406. He assessed a GAF score of 49, based upon what he considered "serious impairment in occupational functioning. [She] [r]elated that if it weren't for the fibo and carpal tunnel, she would be less depressed, and therefore better able to work." AR at 406.[3]

With respect to plaintiff's functional limitations, Dr. Meinz found that plaintiff has marked limitations in her ability to understand, remember, and follow complex instructions because "sometimes [her] concentration is impaired by anxiety and pain." AR at 407. He also assessed marked limitations in plaintiff's ability to exercise judgment and make decisions, perform routine tasks, relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and maintain appropriate behavior in a work setting. AR at 407. His observations supporting these assessed limitations largely reflected plaintiff's self-report during the examination. For example, to support his finding that her ability to exercise judgment and make decisions is markedly limited, he quoted plaintiff's statement that "I don't like making decisions…I feel like I make the wrong choice…a lot of times I will just wait until the decision will be made for me." AR at 407. Similarly, he found her markedly limited in her ability to perform routine tasks based upon her statement that "[s]ometimes I just don't feel like it…too much pain." AR at 407.

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

REPORT AND RECOMMENDATION - 9

Finally, Dr. Meinz opined that plaintiff is likely to be disabled over twelve months because she presents with "a complex interaction between an intense affectivity and fibro pain that is often very difficult to treat. She braces against the intense underlying mood to the point where it aggravates her underlying medical issues. She is very depressed re the matter and knows she is a drain to others . . . [w]ould require expert and coordinated treatment team…probably require a pain management program." AR at 407. His mini-mental status exam reflected that plaintiff was "guarded but polite," her speech/thoughts were "pressured/cohesive," mood was "intense, depressed/edgy…anxious," but her memory was good. AR at 410. She was oriented "to time, place, purpose, date," and could perform digit spans forwards and backwards and recall 3/3 objects immediately and five minutes later. AR at 410.

Plaintiff argues that the ALJ erred by failing to discuss Dr. Meinz's opinion, let alone provide specific and legitimate reasons for rejecting it. Dkt. 12 at 4. In addition, plaintiff contends that this error was not harmless because the limitations assessed by Dr. Meinz meet Listing 12.04 for mental health impairments. *Id*. at 3. Plaintiff points out that in finding that plaintiff's impairments do not meet any of the mental health listings in 12.00, the ALJ states that "none of the treating, reviewing or examining medical providers concluded that the claimant's impairments met or equaled any of the listed impairments." *Id.* at 4 (citing AR at 15). In making this finding, the ALJ assessed moderate limitations in all three functional areas identified in the paragraph B criteria, and noted that there was no evidence that plaintiff has expereinced episodes of decompensation of extended duration. AR at 15. However, plaintiff points out that "none of Ms. Jutte's treating providers were ever asked if she met the mental Health listings, and Social Security requested no evaluation from an examining source." Dkt. 12 at 4.

REPORT AND RECOMMENDATION - 10

1    If a plaintiff establishes that she suffers from a "severe" impairment, or combination of
2    "severe" impairments, that meets or equals a listed impairment as set forth in 20 C.F.R. Pt.
3    404, Subpt. P, Appendix 1, she is deemed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d);
4    416.92(a)(4)(iii). The plaintiff has the burden to prove that she has an impairment that meets
5    or equals the criteria listed in Appendix 1. *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir.
6    2005). To meet a listed impairment, a disability claimant must establish that her condition
7    satisfies each element of the listed impairment in question. *Sullivan v. Zebley,* 493 U.S. 521,
8    530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir.
9    1999).

10   Under Listing 12.04, "[t]he required level of severity for [affective disorders] is met
11   when the requirements in both A *and* B are satisfied, or when the requirements in C are
12   satisfied." 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.04 (emphasis added). To meet the
13   paragraph A criteria, plaintiff must have a "medically documented persistence, either
14   continuous or intermittent," of either a depressive syndrome, manic syndrome, or a "bipolar
15   syndrome with a history of episodic periods manifested by the full symptomatic picture of both
16   manic and depressive syndromes (and currently characterized by either or both syndromes)."
17   Listing 12.04A (1)-(3). A depressive syndrome must be characterized by at least four of the
18   following: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance
19   with change in weight; sleep disturbance; psychomotor agitation or retardation; decreased
20   energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of
21   suicide; hallucinations, delusions, or paranoid thinking. A manic syndrome must be
22   characterized by at least three of the following: hyperactivity; pressure of speech; flight of
23   ideas; inflated self-esteem; decreased need for sleep; easy distractibility; involvement in
24

REPORT AND RECOMMENDATION - 11

activities that have a high probability of painful consequences which are not recognized; or hallucinations, delusions, or paranoid thinking. Listing 12.04A.

To meet the paragraph B criteria, plaintiff's impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Listing 12.04B.[4]

Plaintiff argues that Dr. Meinz's evaluation supports marked limitations in concentration, persistence or pace, and social functioning, thereby satisfying the paragraph B criteria of Listing 12.04. Specifically, plaintiff asserts that her marked limitations in her ability to exercise judgment, make decisions, and perform routine tasks would affect her ability to stay on task and consistently perform on the job, resulting in marked limitations in concentration, persistence and pace. Dkt. 12 at 5. Similarly, her marked limitations in her ability to respond appropriately to a normal work setting, including maintaining proper behavior, would result in marked limitations in social functioning. *Id.* With respect to the paragraph A criteria, plaintiff asserts that the record supports symptoms including anhedonia, sleep disturbance, psychomotor agitation, decreased energy, feelings of guilt or worthlessness, suicidal ideation, pressured speech, decreased need for sleep and engagement in activities with negative repercussions.

Thus, plaintiff contends that "[b]ecause Mr. Jutte has the symptoms to meet the A criteria and because the ALJ ignored the opinion of evaluating provider Dr. Meinz whose opinion assesses a number of marked limitations to meet the B criteria . . . the ALJ erred in his evaluation of whether [plaintiff's] impairments in combination meet Listing 12.04." *Id*. at 7. Moreover, "even if the ALJ properly found Ms. Jutte's impairments do not meet Listing 12.04,

---

[4] Plaintiff does not argue that the paragraph C criteria are met in this case, and therefore those criteria need not be repeated here.

Ms. Jutte argues the ALJ's failure to discuss the limitations Dr. Meinz found in 2010 results in an RFC which fails to consider all limitations supported by the record[.]" *Id*.

The Commissioner concedes that the ALJ erred by failing to discuss Dr. Meinz's opinion, but contends that this error was harmless because Dr. Meinz's opinions were contradicted by "more reliable evidence that the ALJ credited." Dkt. 13 at 6. This line of reasoning is based on the Ninth Circuit's discussion in *Molina* regarding whether an ALJ's failure to give individual reasons for rejecting a lay witness's material testimony is per se prejudicial. *See Molina v. Astrue*, 674 F.3d 1104, 1118-19 (9th Cir. 2012). In that case, the Ninth Circuit asserted in dicta:

> Molina has not suggested any basis for concluding that an ALJ's failure to discuss a lay witness's testimony expressly is likely to affect the outcome in situations where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence which the ALJ credited.

*Id.*

In contrast to *Molina*, this case does not involve testimony similar to other testimony that the ALJ validly discounted. The ALJ rejected the other examining physicians' medical opinions in the record for different reasons, such as the "unsupported" nature of suggested postural limitations, insufficient support for a physician's opinion in his clinical notes, and the contradictory nature of an opinion. AR at 21.[5] In fact, the ALJ did not reject any of these doctors' opinions because they relied entirely upon plaintiff's unreliable self-report, which is the reason the Commissioner argues this Court should discount Dr. Meinz's opinions in this case.

---

[5] After rejecting these opinions, the ALJ afforded "significant weight" to the opinions of the nonexamining State agency consultants. AR at 21.

REPORT AND RECOMMENDATION - 13

The Commissioner asserts that plaintiff "asks the Court to ignore all the evidence the ALJ relied upon to conclude that Plaintiff had moderate limitations" in the functional areas addressed in the paragraph B criteria for Listing 12.04. Dkt. 13 at 9. However, the Commissioner fails to sufficiently respond to plaintiff's argument that Dr. Meinz assessed numerous marked limitations with respect to plaintiff's functioning which, if accepted by the ALJ, may indicate that plaintiff satisfies the criteria of Listing 12.04. Although the Commissioner asserts that "even if the ALJ had discussed Dr. Meinz's opinion, it would not have resulted in a different outcome" because Dr. Meinz's assessed limitations "were all based on information provided by Plaintiff rather than objective medical findings, and the ALJ had many clear and convincing reasons for finding Plaintiff not credible," the fact remains that the ALJ failed to evaluate Dr. Meinz's opinions or provide any valid reasons for rejecting them. The Court declines the Commissioner's invitation to act as the fact-finder, and reject Dr. Meinz's opinions as being based entirely upon plaintiff's unreliable self-report, especially in light of the Commissioner's acknowledgment that the ALJ's RFC assessment was actually consistent with Dr. Meinz's opinions "for the most part" in this case. Dkt. 13 at 7.

Accordingly, this case must be reversed and remanded for further administrative proceedings. On remand, the ALJ shall re-evaluate the medical opinion evidence, including Dr. Meinz's opinion, and re-assess plaintiff's RFC. In addition, the ALJ shall thoroughly explain whether plaintiff's combination of impairments meet or equal a listing, such as Listing 12.04.

B.      On Remand, the ALJ Shall Re-Evaluate Plaintiff's Credibility

Plaintiff argues that the ALJ's reasons for finding plaintiff less than credible were not clear and convincing. Dkt. 12 at 7. Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment[.]" AR at 18.  Because this case is being remanded for reconsideration of the medical evidence, and the Court has found that credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded.  After re-evaluating the medical evidence, the ALJ should reassess plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

DATED this 5th day of December, 2013.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge